People v Smith (2018 NY Slip Op 00042)





People v Smith


2018 NY Slip Op 00042


Decided on January 4, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 4, 2018

107055

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ANTHONY M. SMITH, Also Known as SMURF, Appellant.

Calendar Date: November 14, 2017

Before: Garry, P.J., Lynch, Clark, Aarons and Pritzker, JJ.


Robert A. Regan, Glens Falls, for appellant, and appellant pro se.
Chad W. Brown, District Attorney, Johnstown (Christopher M. Stanyon of counsel), for respondent.


Aarons, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Fulton County (Giardino, J.), rendered August 21, 2014, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree.
In November 2013, members of the City of Gloversville Police Department conducted two controlled buys in which a confidential informant (hereinafter CI) purchased crack cocaine from defendant. Defendant was thereafter charged in a multicount indictment in connection with these two controlled buys. Prior to trial, defendant moved to suppress identification evidence on
the basis that the identification procedure was unduly suggestive. After a Wade hearing, County Court denied the suppression motion. Following a jury trial, defendant was acquitted of the charges related to the first controlled buy but convicted of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree — charges that related solely to the second controlled buy. Defendant's subsequent motion under CPL 330.30 to set aside the verdict was denied. County Court sentenced defendant, as a second felony offender, to an aggregate prison term of 15 years, to be followed by three years of postrelease supervision. Defendant appeals. We affirm.
Defendant first argues that County Court erred in determining that a Rodriguez hearing was unnecessary. Inasmuch as the record reveals that the pretrial identification procedures were [*2]not unduly suggestive (see generally People v Staton, 28 NY3d 1160, 1161 [2017]), a Rodriguez hearing was unnecessary to determine whether the CI's identification of defendant was merely confirmatory. As to the photo array, County Court found that the photographs consisted of six African-American males of the same age, all with very short hair or shaved heads and with average skin tones. Given that our review of the photo array confirms these findings, we find no merit in defendant's claim that the identification was unduly suggestive (see People v Chipp, 75 NY2d 327, 336 [1990], cert denied 498 US 833 [1990]; People v Stevens, 87 AD3d 754, 755 [2011], lvs denied 18 NY3d 861 [2011]). We also reject defendant's contention that, because of lighting, his white shirt depicted in his photograph was very bright and stood out and, therefore, created a substantial likelihood of being singled out. Even though the shading and background of the photographs varied, "the differences were not of such quality as would taint the array" (People v Ruiz, 148 AD3d 1212, 1214 [2017] [internal quotation marks and citation omitted], lv denied 30 NY3d 983 [2017]; see People v Mould, 143 AD3d 1186, 1188 [2016], lv denied 28 NY3d 1187 [2017]). Contrary to defendant's argument, the mere fact that the detective who prepared the photo array and the CI who identified defendant shared a last name does not mean the pretrial identification procedures employed were unduly suggestive [FN1].
We are unpersuaded by defendant's argument that County Court erred in allowing the People to refer to him by his nickname, Smurf. Defendant's nickname was not inherently prejudicial and several witnesses at trial testified that they knew defendant exclusively under that nickname. Based on the foregoing and given that defendant's nickname was probative of his identity, County Court did not abuse its discretion in permitting the People to use defendant's nickname (see People v Hernandez, 89 AD3d 1123, 1125 [2011], lvs denied 20 NY3d 1099 [2013]; People v Dye, 26 AD3d 764, 765 [2004], lv denied 6 NY3d 847 [2006]; People v Candelario, 198 AD2d 512, 513 [1993], lvs denied 83 NY2d 803, 965 [1994]).
Regarding defendant's challenge to County Court's Molineux ruling, "evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (People v Womack, 143 AD3d 1171, 1173 [2016] [internal quotation marks, brackets and citations omitted], lv denied 28 NY3d 1151 [2017]; see People v Pigford, 148 AD3d 1299, 1301 [2017], lv denied 29 NY3d 1085 [2017]) and the probative value of such evidence outweighs any undue prejudice to the defendant (see People v Wells, 141 AD3d 1013, 1019 [2016], lvs denied 28 NY3d 1183, 1189 [2017]). With respect to the evidence that a CI previously gave defendant $200 to purchase crack cocaine from him, defense counsel opened the door to such evidence by continuously referring to this $200 sum in his opening statement and commenting that the exchange would "become important later" (see People v DeCarr, 130 AD3d 1365, 1366-1367 [2015], lv denied 26 NY3d 1008 [2015]; see generally People v Rojas, 97 NY2d 32, 39 [2001])[FN2]. With respect to the evidence of the traffic [*3]citation issued to defendant on the day after the controlled buys, such evidence was probative of defendant's identity. In this regard, the description of the vehicle by the police officer who executed the traffic stop matched the description provided by other witnesses as to the vehicle used by defendant during the controlled buys. Furthermore, after weighing the probative and prejudicial value of this evidence, County Court minimized any prejudice by precluding the People from eliciting the nature of the traffic violation and the fact that defendant pleaded guilty to it (see People v Watson, 150 AD3d 1384, 1386 [2017], lv denied 29 NY3d 1135 [2017]; People v Lownes, 40 AD3d 1269, 1270 [2007], lv denied 9 NY3d 878 [2007]) and by giving a limiting instruction to the jury (see People v Davis, 144 AD3d 1188, 1190 [2016], lvs denied 28 NY3d 1144, 1150 [2017]; People v Nealon, 36 AD3d 1076, 1078 [2007], lv denied 8 NY3d 988 [2007]).
Defendant also contends that the People failed to provide a race-neutral reason in response to his Batson challenge related to the People's use of a peremptory challenge on juror No. 197, the sole African-American prospective juror. Once the moving party establishes a prima facie showing of discrimination, the nonmovant must articulate a race-neutral reason for excluding the prospective juror (see People v Smocum, 99 NY2d 418, 422 [2003]). "As to the second prong of the analysis, a neutral explanation in this context is an explanation based on something other than the race of the juror and the issue is the facial validity of the prosecutor's explanation" (People v Knowles, 79 AD3d 16, 20 [2010] [internal quotation marks and citation omitted], lv denied 16 NY3d 896 [2011]).
During voir dire, the prosecutor explained that she led an investigation into a facility in which the husband of juror No. 197 was the executive director and that such investigation led to the demotion and transfer of the husband to a different facility. The prosecutor thus argued that juror No. 197's impartiality might be affected due to this investigation. County Court accepted this reason, noting, "It's logical." Inasmuch as "[t]he prosecutor's explanations . . . need not be persuasive or plausible but only facially permissible" (People v Callicut, 101 AD3d 1256, 1261 [2012] [internal quotation marks and citations omitted], lvs denied 20 NY3d 1096, 1097 [2013]), we conclude that the People satisfied their step two burden (see People v Ardrey, 92 AD3d 967, 970 [2012], lvs denied 19 NY3d 861, 865 [2012]; People v Ebron, 90 AD3d 1243, 1244 [2011], lvs denied 19 NY3d 863, 866 [2012]; People v Lee, 80 AD3d 877, 879 [2011], lvs denied 16 NY3d 832, 833, 834 [2011]; People v Coleman, 4 AD3d 677, 679 [2004], lvs denied 2 NY3d 797 [2004], 3 NY3d 672 [2004]). Defendant's argument that County Court erred in failing to proceed to step three of the Batson analysis is unpreserved (see People v Acevedo, 141 AD3d 843, 847 [2016]). In any event, by denying defendant's Batson challenge, the court thereby implicitly determined that the prosecutor's race-neutral explanations for exercising a peremptory challenge were not pretextual (see People v Dandridge, 26 AD3d 779, 780 [2006] [internal quotation marks, brackets and citation omitted]; People v Beverly, 6 AD3d 874, 876 [2004], lv denied 3 NY3d 637 [2004]).
As to defendant's claim that he received the ineffective assistance of counsel, it was incumbent upon defendant to show that "his attorney failed to provide meaningful representation and the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Bullock, 145 AD3d 1104, 1106 [2016] [internal quotation marks, ellipsis, [*4]brackets and citations omitted]; see People v Ramos, 133 AD3d 904, 909 [2015], lvs denied 26 NY3d 1143, 1149 [2016]; People v Wheeler, 124 AD3d 1136, 1138-1139 [2015], lv denied 25 NY3d 993 [2015]). "There can be no denial of effective assistance of trial counsel arising from counsel's failure to make a motion or argument that has little or no chance of success" (People v Criss, 151 AD3d 1275, 1280 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 979 [2017]; see People v Thorpe, 141 AD3d 927, 935 [2016], lv denied 28 NY3d 1031 [2016]).
Contrary to defendant's assertion, his counsel's failure to request a missing witness charge did not amount to ineffective assistance given that "defendant has not shown that the [witness] was in the People's control or that [the witness] would have provided material, noncumulative testimony" (People v Kindred, 100 AD3d 1038, 1041 [2012], lv denied 21 NY3d 913 [2013]). We also reject defendant's contention that his counsel was ineffective by failing to move for a mistrial after two witnesses gave misleading testimony inasmuch as corrective measures were taken to remedy any inaccuracies (see generally People v Diviesti, 101 AD3d 1163, 1164-1165 [2012], lv denied 20 NY3d 1097 [2013]). Nor are we persuaded by defendant's argument that his counsel was deficient for failing to advance an argument of pretext in response to the People's race-neutral reason for excluding juror No. 197 and effectively allowing County Court to compress steps two and three of the Batson framework (see generally People v Ali, 89 AD3d 1412, 1414 [2011], lv denied 18 NY3d 881 [2012]). Viewing the record as a whole and taking into account that defendant was acquitted of some charges, we find that defendant was not deprived of meaningful representation (see People v Zayas-Torres, 143 AD3d 1176, 1179-1180 [2016], lv denied 30 NY3d 984 [2017]; People v Cox, 129 AD3d 1210, 1215 [2015], lv denied 26 NY3d 966 [2015]).
Defendant's claim, raised in his CPL 330.30 motion, that the People committed a Brady violation is without merit inasmuch as the record does not indicate that the requested evidence even existed (see People v Stacconi, 151 AD3d 1395, 1397 [2017]). Defendant's argument that County Court denied him his right to a fair and public trial when it excluded his fiancée from the court room is unpreserved in the absence of a timely objection (see People v Hawkins, 110 AD3d 1242, 1244 [2013], lv denied 22 NY3d 1041 [2013]). Even if adequately preserved, defendant's Sixth Amendment right to a public trial was not violated (see People v DeFreitas, 116 AD3d 1078, 1079 [2014], lv denied 24 NY3d 960 [2014]). Defendant's remaining contentions, including those raised in his pro se supplemental brief, have been examined and are lacking in merit.
Garry, P.J., Lynch, Clark and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: We note that a different detective, and not the one who compiled the photographs in the array and who defendant alleged was related to the CI, met with the CI and showed him the photo array.

Footnote 2: Even if defense counsel had not opened the door, the evidence of the prior drug transaction was inextricably interwoven with the charged crimes (see People v Jackson, 100 AD3d 1258, 1261 [2012], lv denied 21 NY3d 1005 [2013]). Furthermore, any prejudice was ameliorated by the court's limiting instructions (see People v Torres, 19 AD3d 732, 734 [2005], lv dismissed 5 NY3d 810 [2005]).